KING, P.J.,
dissenting:
¶ 15. I respectfully dissent from the majority opinion herein. The majority reverses the decision of the Sharkey County Circuit Court, and by so doing denies unemployment compensation benefits to Bobbie F. Berry and Rose M. Berry.
¶ 16. Rose M. Berry and Bobbie F. Berry were included in a number of persons fired by Freshwater Farms on November 16, 1998. Freshwater Farms gave as the reason for firing Bobbie F. Berry and Rose M. Berry their participation in a strike in violation of the Union Contract. Freshwater Farms alleged that the Union Contract required that any complaint ( grievance) be handled under the grievance procedure, set forth in Article V of the Union Contract. Article V, Section 1 of the Union Contract defines a grievance “as a dispute with respect to the alleged violation by the company of a specific provision of this Agreement, with the procedure for settlement of such grievance being set forth in paragraph 2 of this Agreement.”
¶ 17. In May of 1998, Freshwater workers met with Dean Kikes the General Manager of Freshwater Farms, to resolve some fourteen grievances. These included (1) not being permitted to go to the bathroom when necessary, (2) precluding advancement to management or other better jobs, by not giving notice of existing vacancies, (3) limited telephone access, (4) lack of courtesy when speaking with employees, (5) more witnesses should be required when an employee is written up, (6) denial of unemployment benefits, (7) charging fees to employees to retrieve employee information, (8) lack of security in the parking lot, (9) the supply exchange policy, (10) the failure of group leaders to spend adequate time in the plant, (11) the need to place new employees with a senior employee, (12) the need for proper cutting tools, *303 (13) proper pay for making production, and (14) the need for regular meetings with union stewards.
¶ 18. In November 1998, the Freshwater Farms workers identified five grievances. The first grievance was set out in a November 11 letter, regarding the OSHA report, and complained of the existence of maggots and dead flies in the processing area and the toxic smell in the plant.
¶ 19. The second and third grievance, lack of time to go to the bathroom and improper cutting tools, were also included in the May 1998 list of grievances.
¶ 20. Grievances four and five were allegations of racial discrimination and sexual harassment. The claimants testified that sexual harassment was quite common, and that it was openly done in the presence of supervisors, who took no action and stated that the General Manager was aware of the existence of sexual harassment in the plant. The employer’s representative did not specifically dispute this, but rather stated he personally was unaware of any harassment until receiving documentation after claimants’ firing.
¶ 21. The employer’s representative did not refute the claims of racial discrimination, but testified to having no personal knowledge of these claims.
¶22. The testimony of the employer’s representative indicates that the firing of claimants was not related to the merit, or lack of merit, in their grievances, but rather the fact that claimants did not follow the grievance procedure of Article V of the Union Contract.
¶ 23. The employer intended that its obligations and responsibilities, including use of the grievance procedure, would be limited to the specific requirements of the Union Contract. That intent is set forth in Article III, Section 1 of the Contract, which states:
The function of this Agreement is to record exactly and exclusively the Employer’s collectively-bargained obligations. It creates no implied obligations: Its failure to grant expressly any right or privileges to Union or employees constitutes complete reservation of managerial discretion on that issue. The rights and privileges which are granted specifically cannot be enlarged or supplemented by references to unwritten or extrinsic sources such as oral understandings, policies or practices. Any ambiguity shall be resolved in favor of retained managerial discretion except to the extent that the Agreement expressly restricts its exercise.
¶ 24. Those matters outside of the Union Contract are not subject to its dictates. A review of that contract shows that some of the matters complained of clearly fall outside the scope of the Union Contract.
¶ 25. Indeed, the employer’s representative testified that claims of racial discrimination and sexual harassment are not covered by the Union Contract. If they are not included in the Union Contract, then the definition of grievance, as set forth in Article V, Section 1 of the Union Contact, would exclude them, and of necessity exclude them from the grievance process.
¶ 26. If racial discrimination and sexual harassment are not covered by the grievance process, the failure to file a grievance cannot be considered as misconduct, which would preclude the payment of unemployment benefits. Under these circumstances, to require that Claimants file grievances on their claims of racial discrimination and sexual harassment would be to require a foolish and futile gesture. There is no justification for such a requirement.
*304 ¶ 27. Our supreme court has defined misconduct as “conduct evoking such willful and wanton disregard of the employer’s interest as found in deliberate violation of standards of behavior which the employer has the right to expect of his employee”. Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). The failure to engage in a foolish and futile gesture, which is inapplicable to the complaint cannot be considered misconduct sufficient to deny unemployment compensation benefits.
¶ 28. Likewise the refusal to subject one’s self to continued sexual harassment cannot as a matter of law, be considered as misconduct for the purpose of denying unemployment compensation. Hoerner Boxes, Inc. v. Mississippi Employment Security Commission, 693 So.2d 1343, 1348 (Miss.1997).
¶ 29. Just as some of the complaints of the Berrys were clearly beyond the scope of the contract, others were equally as clearly within the scope of the contract. Those complaints within the scope of the contract were subject to the grievance process. The failure to follow that process may well serve as the basis for the discharge of an employee. Employee conduct which justifies dismissal does not of necessity mandate a denial of benefits. That conduct which would justify the denial of unemployment compensation benefits must be recurring and willful or in wanton disregard of the employer’s rights. Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). The strike of November 1998 was neither recurring nor in wanton disregard of the employer’s rights.
¶ 30. A review of the record indicates that at least two of the November complaints were recurring matters, which, without good result, had previously been subjected to the grievance process. Where the same complaint continues unabated after the grievance process, I am not prepared to say that the failure to again submit that complaint to the grievance process is misconduct which mandates the denial of unemployment compensation benefits. Nor can the refusal to work in unsanitary conditions, specifically the significant presence of maggots and dead flies with the attendant health hazard, be considered as misconduct which would justify a denial of unemployment compensation benefits. Mississippi Employment Security Commission v. Noel, 712 So.2d 728(¶ 9) (Miss.Ct.App.1998). The same is true of the refusal to continue to work with improper cutting tools, where to do so would subject the worker to increased exposure to carpal tunnel syndrome.
¶ 31. Actions taken by an employee to protect himself from an actual threat of injury to his mental or physical health are not misconduct as to justify the denial of unemployment compensation benefits. Mississippi Employment Security Commission v. Noel, 712 So.2d 728 (Miss.1998).
¶ 32. Clearly the Union Contract provided a basis upon which to discharge claimants. That basis was the strike in violation of the Union Contract. However, the burden of proving misconduct to support the denial of unemployment compensation, is an affirmative obligation and must be borne by the employer. Miss.Code.Ann. § 71-5-513 A(1)(c) (1972), Little v. Mississippi Employment Security Commission & Kentucky Fried Chicken of Amory, 754 So.2d 1258 (¶ 10) (Miss.Ct.App.1999). Proof of that affirmative obligation requires more than merely establishing a reason to dismiss an employee. Shannon Engineering & Construction, Inc. v. Mississippi Employment Security Commission and Reginald Berry, 549 So.2d 446, 450 (Miss.1989). It requires that the established reasons for dismissal demonstrate a recurring willful or wanton disregard of the employer’s right. Missis *305 sippi Employment Security Commission v. Flanagan, 585 So.2d 783, 785 (Miss.1991). As noted by the trial court, the claimants actions did not rise to the level of a recurring willful or wanton disregard of the employer’s interest.
¶ 33. For the foregoing reasons, I would affirm the decision of the circuit court to award benefits.
LEE and PAYNE, JJ., join this separate opinion.